

FILED

07/14/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: AF 11-0244

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## AF 11-0244

IN RE RULES FOR ADMISSION
TO THE BAR OF MONTANA

ORDER

FILED

JUL 1 4 2020

Bowen Greenwood
Clerk of Supreme Court
State of Montana

On July 9, 2020, attorney Elizabeth A. Brennan petitioned this Court on behalf of Members of the Class of 2020 (Petitioners) regarding the Montana Uniform Bar Exam, scheduled for July 28-29, 2020, in the University Center Ballroom at the University of Montana in Missoula. Petitioners allege that the safety measures that have been put in place due to the COVID-19 pandemic are insufficient to mitigate the risk and that the Temporary Rules for Admission adopted by this Court on June 17, 2020, are not sufficiently comprehensive to address the risks to all examinees. Petitioners argue that this Court should either grant diploma privilege and permanently waive the requirement of passing a Bar exam to prospective examinees who meet certain criteria as proposed by Petitioners or order the institution of additional safety measures to mitigate the risk of COVID-19 transmission during the Bar examination.

After receiving this petition, we requested expedited responses from the State Bar of Montana (State Bar) and the Montana Board of Bar Examiners (Board). The Board responded in opposition to this petition and further indicated that the State Bar supports the Board; this Court should administer the exam in conformance with all applicable health regulations. We further received a few public comments on the petition, including Bar passage and employment data from Paul F. Kirgis, Dean of the University of Montana Alexander Blewett III School of Law.

Petitioners allege the circumstances under which the Bar will be administered inadequately mitigates the risk COVID-19 poses: approximately 90 people will sit in a room together for 12 hours over two days; it is unclear if all attendees will wear masks

during the examination; even if the room is partitioned, all attendees will "breathe the same air, use the same bathrooms, and share the same hallways" during the two-day examination; examinees are not required to self-quarantine prior to attending the examination; and nothing guarantees that examinees will behave safely during non-examination hours.

The Board responds that the arrangements it has made for the administration of the July examination meet all existing state and local requirements, including the requirements set forth in the May 28, 2020 Order of the Missoula City & County Health Officer and that Order's Appendix A: Events and Gatherings with More Than 50 People. The Board asserts that the precautions it intends to employ include: presenting the Montana Law Seminar electronically to eliminate the need for a third day of in-person attendance; requiring attendees wear face masks at all times; sanitizing all public areas, including restrooms; creating additional signage to direct the flow of foot traffic in and out of the examination room; and making hand sanitizer readily available at the sign-in table and throughout the examination room. The Board further asserts that under the May 28, 2020 Order of the Missoula City & County Health Officer, events of 51 to 250 attendees are explicitly allowed in Missoula so long as appropriate precautions are taken, and the Board and State Bar have received comment from the Missoula City & County Health Department that their plan for administering the Bar is appropriate under the circumstances. The Board further asserts that the University Center Ballroom is 10,437 square feet in area and has a seating capacity of 1,000. It explains that the Ballroom will be divided in half; 89 individuals are expected to sit for the Bar exam in the Ballroom, in groups of 44 and 45, and that each examinee will have their own table that they will use for both days.[1]

The Board also points out that this Court issued an Order on June 17, 2020, which grants a one-year provisional license to recent law school graduates, pursuant to a petition from the State Bar of Montana Board of Trustees. *In re Rules for Admission to the Bar of Montana,* No. AF 11-0244, Order (June 17, 2020). That Order granted the adoption of Temporary Rules for Admission to the Bar of Montana. These Temporary Rules

---

[1] The Board further represents that an additional seven individuals will take the Bar examination in special accommodations rooms, for a total of 96 anticipated examinees.

2

recognized the extraordinary circumstances created by the COVID-19 pandemic and provided that individuals who met certain criteria could apply for and obtain provisional admission to the Bar. This provisional admission would allow these individuals to appear in courts of record, administrative tribunals, arbitration hearings, and other judicial and quasi-judicial proceedings in all civil and criminal matters. However, every provisionally admitted individual would be required to be supervised by a lawyer who also met certain criteria, and the provisionally admitted individual would need to disclose their provisional status and obtain consent from any client they represented. For criminal matters in which a defendant has the right to counsel, the supervising lawyer would be required to be personally present at court proceedings. The Temporary Rules further provide that provisional admission would terminate under certain circumstances, including the provisionally admitted individual's failure to sit for either of the first two Montana Bar examinations administered after the Temporary Rules' adoption date.

Petitioners argue the Temporary Rules are inadequate to address their concerns. They allege that it is difficult for provisionally admitted individuals to study for the Bar at a later date, presumably while employed full-time. A public commenter argued that the personal presence of a supervising attorney was an unachievable requirement for provisionally admitted individuals employed by the Office of Public Defender, thereby presenting no genuine alternative to sitting for the July Bar examination.

However, Petitioners acknowledge that this Court must consider not only the potential risk to the health of Bar examinees and their contacts, and the potential harm to the careers of provisionally admitted lawyers, but also the question of whether admitting individuals who meet certain criteria on a diploma privilege would harm the Bar as a whole. While Montana once offered a diploma privilege, this Court eliminated it and required the passage of a Bar examination as a prerequisite for admission to the practice of law in Montana. *In re Proposed Amendments Concerning Bar Examination*, 187 Mont. 159, 609 P.2d 263 (1980). In deciding to eliminate diploma privilege, this Court explained:

> First and foremost, the complexity of the law as it has developed in our modern society has rendered our present system for admission to the

3

practice of law outdated and inadequate to serve the present needs of the legal and judicial system. It necessarily follows that the public is not being properly protected. The wrong people are making threshold decisions that have the effect of transferring control of the admission of lawyers to the Bar away from the court of law resort, i. e., when we eliminate from examination all but graduates from American Bar Association certified schools and extend the diploma privilege to our state law school graduates, we have effectively turned over the selection of who becomes a member of the Montana Bar to the American Bar Association, a nonprofit professional association, and the University of Montana School of Law. This is contrary to all present practice and has no recognizable redeeming value.

. . .

There must be a balance between serving society and the fact that the law has obtained a complexity in modern times which is just a little too much for the ordinary citizen to assimilate in its totality. When we accept this rationale, there is obvious reason and purpose in evaluating competency through the use of more rigid and uniform minimum requirements for admission to the profession, and this will be done in the public interest.

*In re Proposed Amendments*, 187 Mont. at 161-62, 609 P.2d at 265.

In their Petition, Petitioners assert that diploma privilege is not unknown in Montana, and that it was abolished in 1983. Petitioners claim that a tenth of the attorneys who have indicated their support of the current Petition were admitted under diploma privilege. However, Petitioners do not acknowledge the reasons why this Court abolished diploma privilege, nor do they offer any argument for how this Court can balance the potential harms of Petitioners, the Bar, and the public interest.

The Board urges this Court to carefully consider whether it can grant diploma privilege without running roughshod over the reasons why it abolished diploma privilege in the first place. The Board contends:

Statistics reflect that an average of 80-85% of the graduates of the Montana School of Law who sit for the exam and 75-80% of others pass. Petitioners suggest that *all* those who registered for the July 2020 [examination] and those who deferred to sit for the February exam be admitted to the practice of the law in the State of Montana. That means anywhere from 15-20% of Montana graduates and 20-25% of out-of-state applicants who historically have not been able to pass the exam will be

4

granted a lifetime license to practice law in our state. That outcome would put our public at risk and is unfair to other practitioners.

The statistics presented by Dean Kirgis indicate that in 2019, the weighted average pass rate for first-time examinees was 81.43% for University of Montana law school graduates and 83.94% for examinees as a whole. Assuming a generous 85% pass rate, this would mean that if this Court granted diploma privilege in response to this Petition, 14 or 15 individuals would be admitted to the practice of law in this State who would otherwise not be admitted. This is the harm this Court sought to avoid when it eliminated diploma privilege some 30 years ago. Petitioners have provided no argument to justify this outcome, nor do they address qualified graduates of other law schools that may take this examination, or examinations in the future.

Petitioners also point to the alternatives to in-person bar examinations that other states will offer because of COVID-19. However, the Board asserts that other states have different circumstances, including significantly higher numbers of individuals taking their respective bar examinations. The Board also asserts that all of Montana's neighboring states are proceeding with in-person bar examinations.

As for the adequacy of the precautions the Board has undertaken, we find that the Board has clearly given a great deal of thought to the actions it could take to mitigate the risk to examinees. The Board has taken elaborate precautions that are consistent with the recommendations of the Missoula City & County Health Department as well as the statewide directives that the Governor has put into place. We are confident that the Board has taken appropriate precautions and will continue to do so should the situation change. For example, while the Board had initially determined that examinees could remove their masks while seated for the examination, it recently determined, consistent with new recommendations of the Missoula City & County Health Department, that examinees must wear masks during the examination.

Finally, we reiterate that examinees have the option of delaying the Bar examination and practicing under the Temporary Rules. While this is not a perfect solution, examinees are nonetheless not without an alternative to sitting for the July Bar examination.

5

IT IS ORDERED that the Petition is DENIED.

The Clerk of this Court shall provide a copy of this Order to counsel for Petitioners, the State Bar of Montana, and the Montana Board of Bar Examiners.

DATED this 14th day of July, 2020.

_____
Chief Justice

_____

_____

_____

_____

_____

_____
Justices